IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED

97 JAN 21 PM 1:51

U.S. DISTRICT COURT
N.D. OF ALABAMA

PEGGY BROWN,                        )

    PLAINTIFF,                      )

VS.                                 )        CV95-H-2014-S

BEST FOODS, A DIVISION OF CPC       )
INTERNATIONAL, INC.,
                              )

    DEFENDANT.

ENTERED

JAN 21 1997

## ORDER GRANTING SUMMARY JUDGMENT

    In accordance with the memorandum of decision this day
entered, defendant's motion for summary judgment is GRANTED and
it is hereby ORDERED, ADJUDGED and DECREED that judgment is
ENTERED in favor of defendant as to all of plaintiff's claim.
Costs are taxed against plaintiff.

    DONE this ___21st___ day of January, 1997.


_____
SENIOR UNITED STATES DISTRICT JUDGE

36

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED

97 JAN 21 PM 1:51

U.S. DISTRICT COURT
N.D. OF ALABAMA

PEGGY BROWN,                          )

    PLAINTIFF,                        )

VS.                                   )          CV95-H-2014-S

BEST FOODS, A DIVISION OF CPC         )
INTERNATIONAL, INC.,                  )

    DEFENDANT.                        )

ENTERED

JAN 2 1 1997

### MEMORANDUM OF DECISION

On October 29, 1996 defendant CPC International, Inc. d/b/a

Best Foods, Inc. ("defendant" or "Best Foods") filed a motion for

summary judgment. Along with its motion, Best Foods filed a

motion to extend the deadlines for submitting evidence and briefs

in support of its motion, based on ongoing settlement

negotiations with plaintiff. By its November 1, 1996 order, the

court granted defendant's motion to extend deadlines and deemed

the motion for summary judgment to be submitted, without oral

argument, to the court for decision on December 13, 1996.[1]

---

[1] Defendant submitted evidence in support of its motion for
summary judgment on November 22, 1996 which included excerpts from the
depositions of plaintiff and Bill Forrester along with affidavits from
Bill Forrester and Bert Brent. Defendant submitted its brief in
support of the motion on November 27, 1996. Plaintiff submitted
evidence in opposition to defendant's motion on December 6, 1996,
including the affidavits of plaintiff and Dr. Rudeseal, along with
excerpts from the depositions of Bert Brent, Don Dupree, and Bill
Forrester (as well as exhibits from Forrester's deposition).



Plaintiff commenced this action on August 8, 1995 by filing a complaint in this court alleging that Best Foods discriminated against her in violation of the Americans With Disabilities Act ("ADA") and the Federal Age Discrimination in Employment Act ("ADEA") by terminating her and/or eliminating her position as senior sales representative in January of 1994.

In the motion for summary judgment, defendant alleges that it is entitled to judgment as a matter of law on plaintiff's ADEA claim because she has failed to produce substantial, probative evidence that: (1) age was a motivating factor in the decision to eliminate her job and/or (2) the articulated nondiscriminatory reason provided by defendant for plaintiff's termination was pretextual. Defendant also asserts that it is entitled to summary judgment as to plaintiff's ADA claim based on its allegation that plaintiff was not disabled within the definitions of the ADA at the time of the decision to eliminate her job. Alternatively, defendant argues that if plaintiff is disabled she has failed to present substantial, probative evidence that: (1)

---

Plaintiff submitted her brief in opposition to the motion on December 13, 1996. Best Foods submitted a motion on December 18, 1996, requesting leave to file a reply brief, with the reply brief attached to the motion. On December 19, 1996, the court granted defendant's motion for leave to file the reply brief.

2

her disability was a motivating factor in the decision to eliminate her job and/or (2)  the articulated nondiscriminatory reason of corporate reorganization was a pretext.

Plaintiff alleges that members of management at Best Foods were trying to get her off medical leave so that they could terminate her.  While Best Foods provided plaintiff with a revised sales route involving less driving as an "accommodation," according to plaintiff the accommodation was not reasonable because the position was slated to be eliminated in the near future and she would be terminated no matter how hard she worked.


FACTUAL BACKGROUND:

Plaintiff was born on December 13, 1944.  <u>See</u> Brown depo. at 7.  She began her employment with Best Foods on September 17, 1984.  <u>See</u> Brown depo. at  40.  Best Foods manufactures and sales grocery products, such as Hellmann's Mayonnaise, Mazola Corn Oil, and others.  <u>See</u> Forrester depo. at 6-7.  Plaintiff was first hired as a sales representative and was promoted to the position of senior sales representative on January 1, 1990.   Best Foods has four geographic sales divisions containing different regions within each division.  <u>See</u> Forrester affidavit.  Plaintiff worked in the Mid-South Region, Southern Division, which included

3

Alabama and Georgia.  See Forrester depo. at 7-8; Forrester
affidavit.  Specifically, plaintiff worked in Market Area 26 of
the Mid-South Region, which included the greater Atlanta and
Birmingham market.  See Forrester affidavit.  William Forrester
has served as the Mid-South regional manager for Best Foods since
1993.  See Forrester depo. at 7.

Beginning in 1992, plaintiff had primary responsibility for
covering the Super Valu[2] account in Anniston, Alabama.  See
Forrester affidavit.  In 1992, Super Valu restructured its
operations and consolidated its Anniston, Alabama grocery buying
office with an existing regional buying officer in Atlanta,
Georgia.  Id. ; Exhibit 2 to Forrester affidavit.  Once the
consolidation occurred, Super Valu of Anniston no longer
purchased groceries directly from Best Foods.  See Forrester
affidavit.  Rather, all groceries were purchased by the Atlanta
buying office.  Id.  At the time of the consolidation by Super
Valu, Don Wilder, a Best Foods account representative, was

---

[2]  Super Valu is an independent grocery wholesaler that functions
as a middle man between grocery product manufacturers, such as Best
Foods and various retail grocery stores.  Super Valu purchases grocery
products from product manufacturers, like Best Foods, and then sales
them to retail grocery stores, where the products are ultimately sold
to consumers.  See Forrester affidavit.

responsible for the Super Valu regional buying office in Atlanta.
Id.

On or about January of 1993, Forrester assigned plaintiff
partial responsibility for covering Super Valu's Atlanta buying
office as well as the Associated Grocers Birmingham account.
See Forrester affidavit; Brown depo. at 105.  Plaintiff was
responsible for covering the Super Valu account in Atlanta, along
with Wilder.  See Brown depo. at 105; Forrester affidavit.

Around November 23, 1992, plaintiff began experiencing lower
back pain.  See Plaintiff's Evidentiary Submission, Tab 2 & Tab
5, Exh.5.  Forrester had no knowledge of plaintiff's back
problems at the time when he assigned her these new accounts.
See Forrester affidavit; Brown depo. at 177-78.  The new account
responsibilities involved increased driving to Atlanta, that
aggravated her condition, according to plaintiff and her
treating physician, Dr. Rudeseal.  See Plaintiff's Evidentiary
Submission, Tab 6, Exhs. 2, 5 and 12.

On March 18, 1993 plaintiff's immediate supervisor, Rick
Feniello, placed a written reprimand in plaintiff's file
informing Forrester that plaintiff had failed to turn in weekly
sales reports, was not communicating with other representatives,
was not keeping others informed of special programs and was not

5

handling inventory problems at some of her stores.  See Forrester

affidavit; Exhibit 4 to affidavit.  Plaintiff states in her

affidavit that these statements by Feniello were not true.  See

Brown affidavit.

On or about March 22, 1993, plaintiff notified Forrester

that she needed to go on medical leave.  See Brown depo. at 185.

On March 23, 1993, plaintiff sent Forrester written notice that

she would be taking a thirty day medical leave of absence and

began her medical leave.  See Plaintiff's Evidentiary Submission

Tab 6, Exh.2.  Prior to going on medical leave, plaintiff had a

reputation with Best Foods of being above average in sales

ability, excellent with her customers, cooperative with co-

employees and a good senior sales representative.  See Dupree

depo. at 19-20, 22-28.

Best Foods' own company doctor, Dr. James E. Wise, verified

plaintiff's condition and agreed with Dr. Rudeseal's

recommendation of a six month leave of absence.  See Plaintiff's

Evidentiary Submission, Tab 6, Ex. 12.  In her March 23, 1993

letter to Forrester, plaintiff described her physical condition

as follows:

> Due to the severe pain that I am experiencing in my lower
> abdomen, back and kidneys, I am entering the hospital at
> Brookwood Medical Center for extensive tests to determine

6

> the cause.  I have had three kidney-bladder infections in
> two months . . . and now find it necessary to take time off
> to correct the problem.

<u>See</u> Forrester depo., Ex.2.  Shortly after going on medical leave,

plaintiff went to the hospital for treatment and was hospitalized

for three to four days.  <u>See</u> Brown depo. at 187, 212.  According

to plaintiff, when she was released from the hospital she was

told that she "couldn't be driving, you know, an unlimited number

of miles in the car because that is where my problem kicked in so

much - so badly."  <u>See</u>  Brown depo. at 192.

While plaintiff was on medical leave, Forrester wrote a

memorandum to Leon Cooper, Vice President and Southern Division

Manager of Best Foods, noting that a buyer named J.L. Lester

complained to Feniello about plaintiff canceling several

appointments.  <u>See</u> Forrester affidavit, Ex. 3.  Forrester

testified that plaintiff's promotional packages were late, and

plaintiff denies this allegation.  <u>Id</u>.; Brown affidavit.

Forrester also testified that plaintiff was responsible for the

failure to remove short dated gallon-sized Mazola, resulting in a

loss of $7,800.  <u>See</u>  Forrester affidavit, Ex. 3. Plaintiff

denies this allegation as well in her affidavit.  <u>See</u> Brown

affidavit.  Forrester also asserts that some charges at Super

Valu, Lester and others were not paid, when they were due in

7

June, 1992.  Id.  Plaintiff argues that she was not responsible
for these charges because she did not receive the Super Valu
account until 1993.  See Brown affidavit. According to plaintiff,
she received no reprimand concerning such complaints and was not
approached about these problems prior to the lawsuit being filed.
Id.

Forrester wanted to terminate plaintiff on May 12, 1993 as
soon as "the medical situation is resolved."  See Forrester
affidavit, Ex. 3.  According to Forrester, it was an excellent
idea for Cooper to come to Birmingham and meet with plaintiff
personally.  Id.

In June of 1993, Mr. Cooper came to Birmingham and met with
plaintiff.  See Brown depo. at 211.  According to plaintiff, the
subject of the conversation was "what it would take to get her
off medical leave."  See Brown depo. at 195; Brown affidavit.
Plaintiff said she informed Cooper that she wanted to work but
she could not drive a car a great distance[3] due to pain.  Id.
Plaintiff requested a local territory or to be transferred to
Atlanta to be near the Super Valu account.  See Brown affidavit.

---

[3] According to plaintiff, she was able to travel locally, as
well as to Anniston or Gadsden.  See Brown depo. at 196.

8

At the meeting, Cooper told plaintiff that he would get with Bill Forrester and try to work up a local territory for her to accommodate her back pain. See Brown depo. at 217; Brown affidavit. A few days later, plaintiff was called by Forrester and told that Best Foods would provide her a sales route involving less driving time. See Brown affidavit. Plaintiff was given a new immediate supervisor and area manager, along with a revised list of accounts to call on. Plaintiff's revised list of accounts was simply her old accounts, without her shared responsibility for Super Valu in Atlanta. See Forrester affidavit.

When plaintiff returned from medical leave in June of 1993, Bert Brent was her immediate supervisor. See Brent affidavit. Brent was instructed by Forrester "to set up a schedule for Ms. Brown's route that did not require extensive one-day driving and to shorten the driving time in between sales calls and to allow Ms. Brown longer rest periods, including overnight stays, if needed between calls." Id.

After plaintiff returned to work in July of 1993, Brent met with her to discuss her new sales route schedule and allowed her to set up a new route schedule in a manner that suited her medical needs. See Brown depo. at 229-30; Brown affidavit; Brent

9

affidavit; Exhibit 1 to Brent affidavit. According to plaintiff, Brent cautioned plaintiff against driving too much and encouraged her to stay overnight more often. See Brown affidavit. Plaintiff testified that the revised route was workable and had stops built in. See Brown depo. at 231. Plaintiff discussed the revised route with her physician, Dr. Rudeseal, and he informed plaintiff that the route met with his approval. Id. at 232. Plaintiff admitted that she was able to do the revised route physically and had flexibility to make some changes or adaptations as necessary. Id. For example, once a month plaintiff was required to travel to Columbus, Georgia. Id. at 231-33. According to plaintiff, the trip to Columbus aggravated her alleged disability. Id. at 233. When plaintiff complained to Brent, she was given permission to spend the night in Columbus and that alleviated her problem. Id. at 233-34.

Best Foods had a long-term goal of reducing the cost of sales. See Forrester affidavit: Brent affidavit. One element of the strategy in its Mid-South region was transferring all retail sales accounts from Best Foods' sales personnel to independent food brokers. Id. In 1991, Best Foods' Mid-South region adopted this program. Id; Exhibit 1 to Forrester affidavit. Best Foods estimated an annual savings of over $50,000 per year by turning

plaintiff's route, which was the last retail sales route in this market area,[4] over to an independent food broker.  Id.  At the time that plaintiff was terminated, she held the only remaining retail sales route in Birmingham, Alabama that had not been assigned to a retail food broker[5].  In January of 1992, Best Foods began its cost reduction efforts by initiating the process of turning all retail sales routes over to food brokers in the Birmingham-Atlanta market, as sales representatives retired, quit or were terminated.  See Forrester affidavit.

On or about December 17, 1993, Brent sent a memorandum to Forrester recommending plaintiff's termination effective January

_____

[4]  Throughout the submissions by defendant, there are references to plaintiff's position as being the last remaining retail sales position in the Atlanta-Birmingham market.  However, in defendant's brief there is an indication that someone named "Talent" had his position eliminated after the elimination of plaintiff's position. See defendant's brief at 34.  Although it is unclear what position "Talent" held, there appears to be a possible inconsistency between these factual statements.  However, even assuming that Talent's position was a retail sales job and it was not eliminated prior to the elimination of plaintiff's position, based on the overall plan to eliminate all positions and the impending elimination of Talent's position, such a factual inconsistency is irrelevant.

[5]  At the time plaintiff's position was eliminated, Best Foods retained three "managers of key account sales", all of whom had more seniority with the company than plaintiff.  See Forrester affidavit. A manager of key account sales called on wholesale (i.e., non-retail) accounts.  Id.  Although plaintiff's route included a small amount of smaller wholesale accounts, the size of volume of these accounts were not sufficient to justify a full-time sales person in order to service.  Id.

11

3, 1994 and setting forth several problems he had with plaintiff's performance as the basis for her termination. See Exhibit 2 to Brent affidavit. The reasons listed by Brent for recommending her termination included: (1) plaintiff's lack of communication with Brent, other personnel in the region and customers; (2) failure to regularly call on assigned stores; (3) failure to timely submit required documentation; and (4) suspected falsification of records and reports. Id. Plaintiff admits being criticized by Brent concerning paperwork, but does not recall any other complaints by Brent. See Brown depo. at 272-74.

On that same day, December 17, 1993, Brent sent another memorandum to Forrester stating that after further consideration he felt that Best Foods should implement the broker coverage plan to eliminate plaintiff's retail stores assignment, thereby eliminating all retail sales representatives for Best Foods in the Birmingham-Atlanta market. See Brent affidavit; Exhibit 3 to affidavit. According to Brent and Forrester, terminating plaintiff on this reorganization basis rather than for poor performance would allow Best Foods to implement its long range plan, cut costs and allow plaintiff to leave on a more favorable basis. Id.; Forrester affidavit.

12

On January 4, 1994, Forrester met with plaintiff and advised her that her position with Best Foods would be eliminated as of January 15, 1994.  <u>See</u> Forrester affidavit.  Plaintiff testified that as of the date of the deposition her doctor had restricted her from driving long distances "consistently at one time."  <u>See</u> Brown depo. at 216.  She explained that "[i]f I drive a long distance, I need a stop, a rest."  <u>Id.</u> at 216.


## LEGAL ANALYSIS:

Under Fed.R.Civ.P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).  The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings or filings, which it believes demonstrate the absence of a genuine issue of material fact.  <u>Celotex</u>, 477 U.S. at 323.  Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by his own

13

affidavits, or by the depositions, answers to interrogatories, and admissions of file, designate specific facts showing that there is a genuine issue for trial.  Celotex, 477 U.S. at 324.

The substantive law will identify which facts are material and which are irrelevant.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.  Id. at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial.  See Fitzpatrick, 2 F.3d at 1115-17 (citing United States v. Four Parcels of Real Property, 941 F.2d 1428 (11th Cir. 1991)(en banc)).  If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; i.e. facts that would entitle it to a

14

directed verdict if not controverted at trial. <u>Fitzpatrick</u>, 2 F.3d at 1115. Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial. Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to <u>affirmatively</u> show the absence of evidence in the record to support a judgment for the non-moving party on the issue in question. This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires the movant to point out to the district court that there is an absence of evidence to support the non-moving party's case. <u>Fitzpatrick</u>, 2 F.3d at 1115-16. If the

15

movant meets its initial burden by using this second method, the non-moving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts. Lewis v. Casey, _____ U.S. ____, 116 S. Ct. 2175 (1996).

### A.    Age Discrimination Claim

In the complaint, plaintiff alleges that Best Foods discriminated against her based on her age. However, in her brief plaintiff fails to point to any evidence supporting her age discrimination claim. It is undisputed that plaintiff is over 40 years old, and thereby in the protected class. Because it is undisputed that plaintiff was terminated and/or her position was eliminated, it is clear that she was adversely affected by her employer's action. Defendants argue that plaintiff has failed to set forth a *prima facie* case based on the absence of: (1) evidence that she was qualified to assume another position with

16

Best Foods that was open at the time of her discharge and (2)
evidence from which a fact finder could reasonably conclude that
Best Foods intended to discriminate against plaintiff in reaching
the decision to eliminate her position.  <u>Earley v. Champion</u>
<u>International Corp.</u>, 907 F.2d 1077, 1082-83 (11th Cir. 1990).

The evidence presented indicates that Best Foods had
implemented a cost cutting program in the sales area which
included the elimination of all retail sales positions in Market
Area 26 and turning those sales accounts over to independent food
brokers.  Therefore, in the absence of any showing by plaintiff
that positions were available, it is logical to assume that no
retail sales positions were open[6] at the time plaintiff's
position was eliminated.

The only information presented about employees who remained
employed by Best Foods after plaintiff was terminated is that
there were three employees working as key account sales managers
who possessed many more years of experience with the company than
plaintiff.  <u>See</u> Forrester affidavit at p.6.  This information is

---

[6]  Jobs available outside of market area 26 are not at issue in
this case, because plaintiff has presented no evidence that Best Foods
allowed or provided for transfers to different regions or districts.
In fact, in her deposition plaintiff admitted that she was not aware
of any senior sales representative being transferred laterally by Best
Foods.  <u>See</u> Brown depo. at 220.

17

insufficient to provide a basis for a jury to reasonably conclude that age was a motivating factor in Best Food's decision to eliminate plaintiff's position.

During her deposition plaintiff asserts that she had been told by Don Dupree that she would not be transferred to Atlanta because Forrester and Cooper had said that she was too old. See Brown depo. at 325. Plaintiff admitted that she never heard Forrester or Cooper say anything that would indicate a bias against age. See Brown depo. at 328-29. Furthermore, she had never heard any statements by any manager or official of Best Foods indicating to her that Best Foods would want to terminate her due to her age. Id. There is no mention of this purported age statement in the excerpts of Don Dupree's deposition (provided by plaintiff) or in the excerpts of Forrester 's deposition. The only indication in the record that such a statement was made is plaintiff's third-hand restatement of what Forrester and Cooper supposedly said.

Even assuming that such a statement was made, a potential transfer to Atlanta is not relevant in this case. The retail sales positions in the Atlanta market were also being turned over to independent food brokers. See Brown depo. at 280. According to Best Foods, all such positions were eliminated prior to the

elimination of plaintiff's job. Thus, there is no indication that Best Foods' refusal to transfer plaintiff to Atlanta was actually an adverse employment action, based on the fact in Atlanta she would likely have been terminated even sooner.

Plaintiff has failed to present significantly probative evidence to create any genuine factual questions as to whether plaintiff's position was eliminated based on her age. Based on the foregoing, defendant's motion for summary judgment is due to be granted on plaintiff's ADEA claims.

### B.    Disability Discrimination Claim

Plaintiff also alleges that she was discriminated against by Best Foods due to her disability in violation of the ADA. In order to establish a *prima facie* case under the ADA, plaintiff must show that: (1) she has a disability; (2) she is a qualified individual; and (3) she was discriminated against because of her disability. 42 U.S.C. § 12132; Harris v. H&W Contracting Co., 1996 WL 714357 (11th Cir. Dec. 31, 1996).

According to plaintiff, she is disabled within the definitions of the ADA as: (1) having a physical impairment that substantially limits one or more major life activities; (2) having a record of such impairment; and (3) being regarded as

19

suffering from such an impairment.  Plaintiff began suffering
from lower back pain which radiated to the legs in 1992.  Dr.
Frank H. Rudeseal diagnosed plaintiff as suffering from lumbar
discongenic spondylosis in November of 1992.  See Ex. 2 to
Plaintiff's Evidentiary Submission.  On March 23, 1993, plaintiff
requested medical leave due to pain associated with her back
problems.  See Tab 6, Exhs. 3 and 5.  On May 23, 1993, plaintiff
was examined by Dr. James E. Wise, the company physician, who
diagnosed plaintiff as suffering from a degenerative condition
involving the facet joints at L4-5 and L5-S1.  See Tab 6, Ex.12.
Dr. Wise found the request for six months of medical leave to
receive treatment in hopes of getting the condition under
control, to be reasonable and supported the idea.

    It appears undisputed that in March of 1993, plaintiff's
back condition qualified as a physical impairment under the ADA.
See 29 C.F.R. § 1630.2(h) (defining "physical impairment").  The
issue raised in the motion is whether at the time plaintiff's
position was eliminated, December of 1993, her back condition
substantially limited a major life activity.  It is not necessary
to address this issue because plaintiff qualifies as "disabled"
under another basis.

Plaintiff asserts that she is disabled because she has a
record of suffering from a physical impairment that substantially
limits a major life activity. While the limiting effects of
plaintiff's back condition are challenged by defendant as for the
time period of December 1993, it appears undisputed that at the
time plaintiff went on medical leave in March of 1993, her back
condition caused abdominal pain and back pain after periods of
sitting, driving, walking and standing or the lifting of heavy
objects. See Plaintiff's Evidentiary Submission, Tab 2, Tab 6,
Ex.12. The regulations promulgated under the ADA define a person
with "a record of impairment" as one who "has a history of, or
has been misclassified as having, a mental or physical impairment
that substantially limits one or more life activities." 29
C.F.R. § 1630.2(k). Based on the evidence of plaintiff's medical
condition in March of 1993 and for several months thereafter, the
court concludes that for purposes of summary judgment, plaintiff
has meet her burden of proof in presenting factual evidence
supporting a record of impairment.[7] Therefore, plaintiff

_____

[7] The limited medical evidence provided on plaintiff's physical
impairment indicates that she experiences pain after "periods" of
major life activities such as sitting, walking, standing and lifting.
However, in order for her back condition to constitute a disability or
provide the basis for a record of disability, plaintiff must establish
that her impairment substantially limits her by preventing her from
performing the normal activities of daily living. Dutcher v. Ingalls

21

qualifies as a "disabled" person under the ADA, and there is no

reason for the court to consider whether or not plaintiff was

regarded as having such an impairment.

Assuming that plaintiff has presented a *prima facie* case for

purposes of overcoming summary judgment, the defendant next

asserts that plaintiff has failed to present evidence to create

an issue of material fact as to whether or not the defendant's

articulated nondiscriminatory business reason for eliminating

plaintiff's job is a pretext for discrimination.   Defendant

asserts that plaintiff's position as senior sales representative

for retail accounts was eliminated because Best Foods had adopted

a long-range cost cutting plan which included the transfer for

retail sales responsibilities in the Atlanta-Birmingham market,

from in-house representatives, like plaintiff, to independent

food brokers.   At the time plaintiff's position was eliminated,

---

Shipbuilding, 53 F.3d 723, 726 (5th Cir. 1995); Olson v. General
Electric Astrospace, _____ F.3d _____, 1996 WL 694465 (3d Cir. Dec.
18, 1996); 29 C.F.R. Part 1630.2(k) App.   Limitations that a person is
unable to do heavy lifting or repetitive movements have been
determined to be insufficient to establish any substantial limitation
due to an impairment.   Dutcher, 53 F.3d at 726; Ray v. Glidden Co., 85
F.3d 227, 229 (5th Cir. 1996).   The evidence presented to the court
does not explain the duration of the "period" of activity or the
extent of limitation on such activities.   Therefore, at this stage of
the proceedings, the court draws all reasonable inferences in favor of
plaintiff and assumes that the period of activity required to cause
pain is short enough to result in substantial limitation due to her
physical impairment.

all other similar sales positions in the Atlanta-Birmingham
market had previously been eliminated and sales responsibilities
turned over to food brokers.

Plaintiff asserts that this job restructuring rationale is a
pretext for discrimination because other employees in other
districts remained in their retail sales positions for Best Foods
and Forrester and Cooper intended to fire her regardless of the
restructuring plan.  While the evidence as to purported remaining
retail sales positions in the Mid-South Region (i.e. Chattanooga
and South Georgia) is sketchy, even assuming that such positions
continue to exist, there existence does not create a genuine
issue of material fact as to defendant's reorganization plans.
Best Foods was not required to implement the elimination of
retail sales jobs in every region simultaneously.  Exhibit 1 to
Forrester's affidavit indicates that the Southern Division of
Best Foods outlined a plan in November of 1991, prior to
plaintiff notifying defendant of her disability, to"[e]liminate
the entire retail sales force in the Atlanta Market Area and
replace with a retail broker."  It is undisputed that plaintiff's
job was in the Atlanta Market Area.  Proof of a plan for such
reorganization efforts several years prior to Best Foods having
any knowledge of plaintiff's condition eliminates any reasonable

23

inference that the reorganization basis for eliminating

plaintiff's retail sales position was pretextual.

It is undisputed that while plaintiff was out on medical

leave, Forrester wanted to terminate her due purported

performance problems.[8]  While the evidence clearly indicates that

Forrester wanted to resolve the situation by getting plaintiff

off medical leave and immediately terminating her, such events

never occurred.  See Forrester affidavit, Ex.3. Instead, when

Forrester consulted with Cooper about his plans, Cooper

intervened by meeting with plaintiff, which resulted in an offer

by Best Foods to accommodate plaintiff's disability by allowing

her to return to her sales responsibilities as to most of her

previous accounts, but eliminating accounts requiring long

---

[8]  After plaintiff returned from medical leave, her new
supervisor, Bert Brent, reported a number of performance problems, as
discussed above.  In December of 1993, Brent recommended that
plaintiff be terminated due to her poor performance.  Plaintiff
disputes that she performed poorly at any time during her employment
and defendant does not rely her poor performance as a legitimate non-
discriminatory reason for her termination in its summary judgment
brief.  However, regardless of whether or not plaintiff  was
performing poorly and adequately on the job, if a perceived poor
performance was Best Foods' reason for terminating her, it provides a
legitimate non-discriminatory reason for her termination.  See Nix v.
WLCY Radio/Rahall Communications, 738 F.2d 1181, 1187 (11th Cir.
1984).  Based on the evidence of documented performance problems, the
court believes that termination based on poor performance, as
initially recommended by Brent, has not been shown to be a pretext and
would also entitled defendant to summary judgment on all of
plaintiff's claims.

24

distance driving, as well as providing for breaks and overnight stays.  <u>See</u> Brown depo. at 229-30.  When plaintiff returned to work in June of 1993, she received a new supervisor and a revised sales route that was intended to accommodate her physical impairment.  <u>Id.</u>  Regardless of Forrester's initial desire to terminate plaintiff based on purported performance problems that came to light during her medical leave, Forrester reversed his position and allowed plaintiff to return to a job involving most of her earlier responsibilities.  <u>Id.</u>

Plaintiff argues that Best Foods did not reasonably accommodate her because the position they provided was a "dead end" job that was targeted for elimination.  There is no dispute that at the time plaintiff returned to work, there were plans in place to terminate all retail sales representative positions in the Atlanta market, including the one held by plaintiff.  <u>See</u> Forrester affidavit, Ex.1.  However, this position was the same position plaintiff had left when going on medical leave, with the exception of the Super Valu account.  <u>See</u> Brown affidavit.

The applicable definition for "reasonable accommodation" in the regulations promulgated under the ADA is as follows:

> (ii)  Modifications or adjustments to the
> work environment, or to the manner of
> circumstances under which <u>the position held</u>

25

> or desired is customarily performed, that
> enable a qualified individual with a
> disability to perform the essential functions
> of that position; or
>
> (iii) Modification or adjustments that enable
> a covered entity's employee with a disability
> to enjoy equal benefits and privileges of
> employment as are enjoyed by its other
> similarly situated employees without
> disabilities.

29 C.F.R. §1630.2(o)(1). Best Foods had no affirmative duty to

provide plaintiff with a job of any assured duration beyond those

jobs held by other employees similarly situated who were not

disabled. Wernick v. Federal Reserve of New York, 91 F.3d 379

(2d Cir. 1996). Best Foods "only had an obligation to treat her

in the same manner that it treated other similarly qualified

candidates." Wernick, 91 F.3d 379; see also 29 C.F.R. Part

1630.9 App. Nothing within the ADA supports the position that

Congress intended to interfere with personnel decisions within an

organizational hierarchy. Id. "Congress intended simply that

disabled persons have the same opportunities available to them as

are available to nondisabled persons." Id. In other words, the

ADA does not require that disabled persons be given priority in

hiring or reassignments over those who are not disabled nor any

other form of affirmative action in favor on individuals with

26

disabilities.  Id. (quoting Daugherty v. City of El Paso, 56 F.3d
695, 700 (5th Cir. 1995)).

The fact that the accommodation provided is to be
"reasonable" indicates that the type of accommodation required is
to be judged in relation to the particular factual situation.
Id.  Plaintiff bears the initial burden of establishing that the
accommodation sought is "reasonable."  Monette v. Electronic Data
Systems Corp., 90 F.3d 1173 (6th Cir. 1996).

Based on the complaint and materials submitted in opposition
to the motion for summary judgment, the court can discern no
attempt by plaintiff to articulate a reasonable accommodation
that was not provided by Best Foods, other than possibly a sales
job of a longer or indefinite duration.  Plaintiff has failed to
provide evidence of the existence of any such available jobs that
would have accommodated her disability.  Mere speculation that
she could possibly transfer to another position is insufficient
to defeat summary judgment.  Milton v. Scrivner, Inc., 53 F.3d
1118 (10th Cir. 1995).  The only sales jobs that plaintiff points
to as continuing to exist in her market area were the managers of
key account sales which appears to be a promotion, with no
indication of any vacancy.  "To the extent that any such transfer
would be a promotion, the ADA does not require accommodation from

27

defendant." Milton, 53 F.3d at 1125 (citing 29 C.F.R. Part 1630
App. § 1630.2(o).)

"An employer is not obligated [under the ADA] to provide an
employee the accommodation he requests or prefers, the employer
need only provide some reasonable accommodation." Schmidt v.
Methodist Hospital, 89 F.3d 342, 344-45 (7th Cir. 1996). The
decision as to which reasonable accommodation to employer remains
with the employer. Weiler v. Household Fin. Corp., 101 F.3d 519,
526 (7th Cir. 1996); 29 C.F.R. Part 1630.9 App. Nothing in the
ADA allows an employee to take on the responsibility of
establishing the conditions for her employment. Weiler, 101 F.3d
at 526. For example, the ADA does not require an employer to
transfer an employee who is a qualified individual with a
disability to work under another supervisor. Id.; Wernick, 91
F.3d 379 .

> An employer may be obligated to reassign a
> disabled employee, but only to vacant
> positions; an employer is not required to
> "bump" other employees to create a vacancy so
> as to be able to reassign the disabled
> employee. Nor is an employer obligated to
> create a "new" position for the disabled
> employee. Furthermore, in order for an
> employer to be obligated to accommodate an
> employee by reassigning them to a different
> position, the accommodation must not impose
> an "undue hardship" on the employer.

28

Weiler v. Household Finance Corp., 101 F.3d 519 (7th Cir. 1996)
(quoting Gile v. United Airlines, Inc., 95 F.3d 492, 499 (7th
Cir. 1996)(other citations omitted)); see also Monette v.
Electronic Data Systems Corp., 90 F.3d 1173 (6th Cir. 1996).
Plaintiff has failed to present any evidence indicating that Best
Foods did not treat her in the same manner it treated other
similarly situated employees due to her disability.  There has
been no evidence presented to create any genuine dispute as to
whether returning plaintiff  to the position she held prior to
going on medical leave with the elimination of long distance
travel to accommodate her disability fails to qualify as a
reasonable accommodation.  Furthermore, plaintiff has failed to
present any evidence of an available reasonable accommodation
involving a job of an extended duration.  Despite the fact that
plaintiff's position was eliminated within a little more than six
months after her return, the accommodation was reasonable in
relation to the impeding phasing out of all such jobs in the
area.

     Based on the foregoing, defendant's motion for summary
judgment as to plaintiff's ADA claim is due to be granted.  A
separate order will be entered.


                              29

DONE this 21st day of January, 1997.

SENIOR UNITED STATES DISTRICT JUDGE